1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12  JEFFREY A. PRUSSIN and JUDY M.              Case No.  5:13-cv-02874 HRL
    PRUSSIN,
13                                              **ORDER DENYING DEFENDANT**
              Plaintiffs,                       **TRIPLE CROWN MAFFUCCI**
14                                              **STORAGE CORPORATION'S MOTION**
        v.                                      **FOR PARTIAL SUMMARY**
15                                              **JUDGMENT**
    BEKINS VAN LINES, LLC; BEKINS VAN
16  LINES, INC.; TRIPLE CROWN                   [Re:  Dkt. 41]
    MAFFUCCI STORAGE CORPORATION,
17
              Defendants.
18          Husband and wife Jeffrey and Judy Prussin sue for damages to their personal property

19  allegedly sustained during a cross-country move.  The remaining defendants are Bekins Van

20  Lines, LLC (Bekins) and Triple Crown Maffucci Storage Corporation (TCM).[1]  On the record

21  presented, and unless otherwise indicated, the basic undisputed (or unrefuted) facts are these:

22          In the Fall of 2008, the Prussins planned to move from New York to Florida.  They

23  selected Bekins as their mover.  In December 2008, TCM arrived at plaintiffs' New York City

24  apartment and packed up their belongings.  TCM says that it then transported the property from

25  plaintiffs' residence to TCM's warehouse in Amityville, New York.

26

27  ───────────────
[1] Defendant Bekins Van Lines, Inc. was voluntarily dismissed.
28

United States District Court
Northern District of California

1    The following month, plaintiffs changed their destination from Florida to California.[2]

2    According to TCM, plaintiffs' belongings remained in TCM's Amityville warehouse until

3    December 2009, when the property was picked up by Bekins for transportation to California.

4        Plaintiffs claim that when they unpacked their property at their new California residence,

5    much of it was damaged or missing entirely.  Defendants dispute plaintiffs' claims, contending

6    that plaintiffs either suffered no damages or are overstating them.

7        The Prussins filed the instant lawsuit, asserting claims against Bekins and TCM for

8    negligence and for violation of the Carmack Amendment to the Interstate Commerce Act, 49

9    U.S.C. § 14706(c)(1)(A).

10        TCM now moves for summary judgment on the Carmack Amendment claim, arguing that

11   it is a broker, not a carrier, and therefore cannot be held liable under that statute.  Plaintiffs oppose

12   the motion.  All parties have expressly consented that all proceedings in this matter may be heard

13   and finally adjudicated by the undersigned.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Upon

14   consideration of the moving and responding papers, as well as the arguments of counsel, this court

15   denies the motion.

16                              **LEGAL STANDARD**

17        A motion for summary judgment should be granted if there is no genuine issue of material

18   fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

19   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party bears the initial

20   burden of informing the court of the basis for the motion, and identifying portions of the

21   pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the

22   absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In

23   order to meet its burden, "the moving party must either produce evidence negating an essential

24   element of the nonmoving party's claim or defense or show that the nonmoving party does not

25   have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

26

27   _____

     [2] Although immaterial to the resolution of the instant motion, plaintiffs say that they changed their
28   plans so that they could be with Jeffrey Prussin's mother, who lived in Pebble Beach, California
     and became seriously ill.

United States District Court
Northern District of California

2

1   Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

2       If the moving party meets its initial burden, the burden shifts to the non-moving party to

3   produce evidence supporting its claims or defenses.  See Nissan Fire & Marine Ins. Co., Ltd., 210

4   F.3d at 1102.  The non-moving party may not rest upon mere allegations or denials of the adverse

5   party's evidence, but instead must produce admissible evidence that shows there is a genuine issue

6   of material fact for trial.  See id.  A genuine issue of fact is one that could reasonably be resolved

7   in favor of either party.  A dispute is "material" only if it could affect the outcome of the suit

8   under the governing law.  Anderson, 477 U.S. at 248-49.

9       "When the nonmoving party has the burden of proof at trial, the moving party need only

10  point out 'that there is an absence of evidence to support the nonmoving party's case.'"

11  Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Celotex Corp., 477 U.S. at

12  325).  Once the moving party meets this burden, the nonmoving party may not rest upon mere

13  allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine

14  issue for trial.  Id.

## DISCUSSION

15

16  **A.  Plaintiffs' Fed. R. Civ. P. 56(d) Request for Continuance**

17      Claiming that the issues raised in the instant motion were unanticipated, plaintiffs request

18  permission to conduct discovery pursuant to Fed. R. Civ. P. 56(d).  That rule provides:  "If a

19  nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts

20  essential to justify its opposition, the court may (1) defer considering the motion or deny it;

21  (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other

22  appropriate order."  Fed. R. Civ. P. 56(d).  "A party requesting a continuance pursuant to Rule

23  56(f) [now 56(d)] must identify by affidavit the specific facts that further discovery would reveal,

24  and explain why those facts would preclude summary judgment."  Tatum v. City & Cnty. of San

25  Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006).  Plaintiffs have not done so.  Their request for a

26  Rule 56(d) continuance is denied.

27      In any event, for the reasons to be discussed, the court concludes that summary judgment is

28  inappropriate anyway.

United States District Court
Northern District of California

### B. The Carmack Amendment

"The Carmack Amendment subjects common carriers and freight forwarders transporting cargo in interstate commerce to absolute liability for actual loss or injury to property." Insurance Co. of N. Am. v. NNR Aircargo Service (USA), Inc., 201 F.3d 1111, 1115 (9th Cir. 2000) (citing 49 U.S.C. § 14706(a)). The statute entirely preempts state claims against such carriers[3] and freight forwarders. See Read-Rite Corp. v. Burlington Air Express, Ltd., 186 F.3d 1190, 1196 (9th Cir. 1999) (citing Adams Express Co. v. Croninger, 226 U.S. 491, 505, 33 S. Ct. 148, 57 L.Ed. 314 (1913)). The Carmack Amendment, however, does not govern brokers.[4] See Lumbermens Mut. Cas. Co. v. GES Exposition Servs., Inc., 303 F.Supp.2d 920, 921 (N.D.Ill.2003).

### 1. Plaintiffs' Preemption Argument

The Prussins contend that, even if TCM is a broker (which they dispute), the Carmack Amendment nonetheless governs TCM based on federal preemption. Generally in litigation, defendants are the ones who raise preemption as a defense. In a somewhat unusual move, plaintiffs now argue that their Carmack Amendment claim survives summary judgment because the Carmack Amendment impliedly preempts their own negligence claim against TCM.

Whether the Carmack Amendment preempts state law claims against brokers is not a settled issue. No one has cited, nor has this court found, binding precedent on point. A number of courts have concluded that the statute does not preempt state law claims because it does not govern brokers. See, e.g., Chatelaine, Inc. v. Twin Modal, Inc., 737 F. Supp.2d 638, 641 (N.D. Tex. 2010) ("As the Carmack Amendment does not apply, there can be no preemption under the

---

[3] The term "carrier" is statutorily defined as "a motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). Most pertinent to the issues presented in the instant motion, "[t]he term 'motor carrier' means a person providing motor vehicle transportation for compensation." Id. § 13102(14). And, a "household goods motor carrier" means "a motor carrier that, in the ordinary course of its business of providing transportation of household goods, offers some or all of the following additional services: (i) Binding and nonbinding estimates. (ii) Inventorying. (iii) Protective packing and unpacking of individual items at personal residences. (iv) Loading and unloading at personal residences." Id. § 13102(12)(A)(i)-(iv).

[4] The term "broker" "means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

United States District Court
Northern District of California

1  Carmack Amendment for the state law claims of breach of contract, negligence, negligent hiring

2  practices, and violation of the [state deceptive trade practices act].”); Chubb Group of Ins. Cos. v.

3  H.A. Transp. Sys., Inc., 243 F. Supp.2d 1064, 1069 (C.D. Cal. 2002) (“However, the Carmack

4  Amendment does not apply to brokers.  Consequently, most courts hold that brokers may be held

5  liable under state tort or contract law in connection with shipments.”) (internal citations omitted);

6  Laing v. Cordi, No. 2:11-cv-566-FtM-29SPC, 2012 WL 2999700 at *2 (M.D. Fla., July 23, 2012)

7  (“If the party is a carrier, the Carmack Amendment will apply and preempt any state law claims

8  related to the delivery of the goods; however, if the party is a broker, the state law claims will not

9  be preempted.”).

10      Two often-cited contrary cases hold that the Carmack Amendment impliedly preempts

11  negligence claims:  Ameriswiss Technology, LLC v. Midway Lines of Illinois, Inc., 888 F.

12  Supp.2d 197 (D.N.H. 2012), which in turn relied on York v. Day Transfer Co., 525 F. Supp.2d

13  289 (D.R.I. 2007).  Neither case, however, addresses the statutory text that makes the Carmack

14  Amendment applicable only to claims against carriers.  This court therefore does not find

15  Ameriswiss or York persuasive.  Accordingly, this court declines to find implied preemption of

16  plaintiffs’ negligence claim and instead follows those courts that hold that the Carmack

17  Amendment does not preempt state law claims against brokers.

18      **2.  TCM’s Status as Broker**

19      Even so, for the reasons to be discussed, there remains a material fact dispute whether

20  TCM was a broker or whether it held itself out as an interstate carrier with respect to the Prussins’

21  move.

22      For its part, TCM submits the declaration of Paul Levine, TCM’s President, who avers that

23  at all relevant times, TCM was an intrastate moving and storage company based in New York and

24  was not authorized by the Federal Motor Carrier Safety Administration as an interstate motor

25  carrier.  (Levine Decl. ¶¶ 2-3).  He further states that TCM did not operate as an interstate motor

26  carrier with respect to the Prussins’ move.  (Id. ¶ 5).  Instead, Levine says that TCM is “a local

27  booking agent for [Bekins],” and in that capacity, solicits and arranges the interstate shipment of

28  household goods on Bekins’ behalf, but Bekins performs the interstate motor carriage.  (Id. ¶¶ 6-

United States District Court
Northern District of California

7).  With respect to the Prussins, Levine says that TCM told them more than once that Bekins, not TCM, would transport their goods.  (Id. ¶ 10).  According to Levine, all TCM did was arrange for the transportation of plaintiffs' property and then packed and transported the goods solely within New York state, where the property was stored at TCM's Amityville warehouse until Bekins picked them up for interstate carriage to California.  (Id. ¶¶ 12-13).

There is no question, however, that an entity that holds itself out as an interstate motor carrier can be held liable under the Carmack Amendment:   "Whether a company is a broker or a carrier/freight forwarder is not determined by how it labels itself, but by how it holds itself out to the world and its relationship to the shipper."  Lumbermens Mut. Cas. Co., 303 F. Supp.2d at 921 (citing Custom Cartage, Inc. v. Motorola, Inc., No. 98-C5182, 1999 WL 965686 at *11-12 (N.D. Ill., Oct. 15, 1999)).  Boiled to its essence, the instant motion turns on plaintiffs' (disputed) contention that TCM held itself out as one and the same as Bekins, who, on the record presented, no one disputes was an interstate carrier on plaintiffs' cross-country move.  The Prussins maintain that, throughout the entire process, the relationship between TCM and Bekins was intentionally blended in order to lead them to believe that there was only one company (not two) that ultimately was responsible for the planning, packing, storage, and transport of their property.  TCM maintains that plaintiffs' evidence shows nothing of the kind.

Viewing the record as whole, and drawing all reasonable inferences in the Prussins' favor, however, this court finds that they have submitted evidence sufficient to raise a triable fact issue whether TCM held itself out as Bekins: [5]

- Plaintiffs submit a copy of their contract with Bekins.  (Prussin Decl., Ex. A).  It prominently displays the name "Bekins" and contains a TCM fax line across the top.  TCM says the fax line means nothing.  A reasonable jury, however, could find significance in it.

- Plaintiffs submit various email correspondence.  TCM argues these emails merely

---

[5] The court agrees that Mr. Prussin has laid no foundation establishing that he properly may testify as to the understanding of the "consuming public," and TCM's objection to that particular testimony in ¶ 5 of Mr. Prussin's declaration is sustained.  Fed. R. Evid. 602.  This ruling does not, however, change the court's conclusion that material fact disputes preclude summary judgment.

1     demonstrate that the Prussins understood that they had hired Bekins, not TCM, to

2     perform their interstate move.  (Prussin Decl. Ex. B).  That could be one

3     interpretation.  But, at least one email, sent to Mr. Prussin, could lead a reasonable

4     jury to reach a different conclusion.  It states "Mr. Prussin---Here are your final

5     charges.  Please pay with a certified or bank check.  Thank you for choosing Bekins

6     for your move to Pebble Beach, CA." and it is signed "Byril Gray, Triple Crown

7     Maffuci Bekins."  (Id.).

8     •   Plaintiffs submit a cost estimate for the storage of their property.  (Prussin Decl.,

9       Ex. C).  Inasmuch as this concerns the storage of the goods at TCM's Amityville

10      warehouse, TCM contends that it does not in any way support plaintiffs' claim that

11      TCM held itself out as an interstate carrier.  Again, however, the document bears

12      the header "Maffucci Bekins" with a single address of 140 New Highway, N.

13      Amityville, NY 11701.

14     •   Plaintiffs submit a TCM invoice, which includes charges for "Interstate move to

15       Ca." (Prussin Decl., Ex. D).  TCM contends that this merely shows that TCM

16      billed the Prussins for both Bekins' interstate services and for TCM's intrastate

17      services, and not that it actually undertook or accepted legal responsibility for the

18      interstate transportation.  A reasonable factfinder, however, could view this as

19      evidence that TCM and Bekins were one and the same.

20 In sum, material fact disputes preclude summary judgment as to TCM's status as a broker.  TCM's

21 motion as to the Carmack Amendment claim therefore is denied.

**ORDER**

23     Based on the foregoing, TCM's motion for partial summary judgment is denied.

24     SO ORDERED.

25 Dated:  February 3, 2015

26

27    _____
    HOWARD R. LLOYD
    UNITED STATES MAGISTRATE JUDGE

28

United States District Court
Northern District of California

5:13-cv-02874-HRL Notice has been electronically mailed to:

Frank Xavier Dipolito    fdipolito@swaindipolito.com, swaindipolito@lawyer.com

Gavin E Kogan     gavin@lg-attorneys.com

Gregg S. Garfinkel     ggarfinkel@nemecek-cole.com

Ross Ian Landau     rlandau@swaindipolito.com

United States District Court
Northern District of California