1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JEFFREY A. PRUSSIN, et al.,

Plaintiffs,

v.

BEKINS VAN LINES, LLC,

Defendant.

Case No.5:13-cv-02874-HRL

**ORDER GRANTING IN PART MOTION
FOR DEFAULT JUDGMENT**

Re: Dkt. No. 76

Husband and wife Jeffrey A. and Judy M. Prussin ("plaintiffs" or "the Prussins") sued Bekins Van Lines LLC ("Bekins") and Triple Crown Maffucci Storage Corporation ("Triple Crown") for damages to their personal property.[1]

## BACKGROUND

The Prussins are avid collectors of fine art and antique furniture and own hundreds of pieces, many of them very old family heirlooms. They decided to move from their apartment in New York City to Florida and undertook to make arrangements with a moving company. They engaged Bekins and agreed to a price that took into account their many high value items of property. A change of circumstances caused them to move instead to California, and this necessitated that their personal property, after being packed by Bekins' people, to be temporarily

---

[1] Bekins Van Lines, Inc. was also sued, but early on was voluntarily dismissed by plaintiffs. (Dkt. 11).

United States District Court
Northern District of California

1    placed in storage with Triple Crown.  Months later, when their goods arrived at their new home in

2    California, the Prussins were confronted with hundreds of missing or severely damaged pieces

3    from their collection.

4         They filed suit under the Carmack Amendment ("Carmack"), 49 U.S.C. sec 14706 *et seq.*,

5    which governs cargo claims for damaged goods.[2]  Their verified complaint sought approximately

6    $530,000 to repair or replace approximately 600 collectibles and objects of art, and an additional

7    $132,000 in "consequential" damages.  (Dkt. 1).

8         Both Bekins and Triple Crown answered the complaint.  (Dkt. 6, 34).  All parties

9    consented to Magistrate Judge jurisdiction.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

10        When the case was in its early stages (following a brief hiatus while the parties attempted

11   unsuccessfully to submit the claims to arbitration), counsel for Bekins moved to withdraw.  (Dkt

12   49).  The attorney reported that Bekins had dissolved, was no longer an operating entity, had

13   stopped communicating with its attorney, and was not paying its bills.  Bekins was served with

14   this motion, and with each of the orders that followed as a consequence.  No one opposed the

15   motion, which was granted with the proviso that the attorney would continue to receive papers and

16   forward them to Bekins unless and until it secured new counsel.  (Dkt. 55).  In bold letters, the

17   order told Bekins that "it may not appear pro se or through its corporate officers but must retain

18   new counsel forthwith to represent itself in this lawsuit."  (Id.).  Further, it was "advised that it

19   retains all the obligations of a litigant and its failure to appoint an attorney may lead to an order

20   striking its pleadings or to entry of its default."  (Id.).

21        Bekins did not retain new counsel and, from all appearances, stopped paying any attention

22   to the lawsuit.  Bekins did not respond to discovery propounded by plaintiffs, and that resulted in a

23   motion to compel.  (Dkt. 56).  The motion, unopposed, was granted.  (Dkt. 61).  That order, and

24   the related orders that followed, were served on Bekins.  (Dkt. 62).  Bekins did not comply with

25   the discovery order, and the Prussins moved for terminating sanctions.  (Dkt. 63).  The court

26   issued an order to Bekins to show cause in writing by a date certain why its answer should not be

27   _____

28   [2] Plaintiffs also pleaded "general negligence" but did not pursue that claim, and the court will not
     address it here.

2

stricken and its default entered.  (Dkt. 67).  No response from Bekins.  Ultimately, the court struck Bekins' answer and entered its default.  (Dkt. 71,72).  The Prussins now move for a default judgment.[3]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure Rule 55(b), the court may enter a default judgment against a party whose default has been entered.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In *Eitel v. McCool*, the Ninth Circuit described seven factors courts should consider in determining whether to grant default judgment.  782 F.2d 1470, 1471-72 (9th Cir. 1986).  These factors are: (1) the possibility of prejudice to the claimant; (2) the merits of the substantive claim; (3) the sufficiency of the claimant's pleading; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Id.*  In general, the court should take the claimant's factual allegations to be true, except for allegations of damages.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

## DISCUSSION

### A.      Subject Matter and Personal Jurisdiction

Before entering a default judgment, a district court must first review whether subject-matter and personal jurisdiction exist.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Here, the court has subject matter jurisdiction over this matter because it is brought under the Carmack Amendment, a federal law.  *See* 28 U.S.C. §§ 1331, 1367.  The court is also satisfied that it has personal jurisdiction over Bekins, which was properly served, appeared, participated in the litigation (for a while), and did not challenge personal jurisdiction.

### B.      The Eitel Factors

With respect to the first Eitel factor, the prejudice to the Prussins is obvious:  if a default judgment were denied, they would have no remedy from Bekins.

---

[3] Triple Crown settled with the Prussins.

United States District Court
Northern District of California

1    As for the second and third  factors, there is convincing evidence that the Prussins'

2    property was badly damaged while under Bekins' responsibility, and the basis of Bekins' liability

3    is well described in the Complaint.

4    The fourth factor, the sum of money at stake, is substantial (more than $500,000).  This is

5    likely an unusually large claim for damages to household goods in storage and transit, but these

6    were very unique, unusual goods.  And, Bekins could not claim lack of notice of what it was

7    taking on.  Plaintiffs made full disclosure entering into the transaction with Bekins as to their

8    value, filling out several "High Value" lists, and paying for extra insurance to cover their value.

9    And, Bekins knew from the attachment to the complaint just what items were damaged or lost and

10   what the Prussins claimed as the cost of repair or replacement.  Had Bekins chosen to litigate, it

11   could have challenged those calculations and, perhaps, whittled them down.  So, yes the sum is

12   substantial, but it is warranted by the evidence.

13   As for a possible dispute on the material facts (factor 5), there would not appear to be any

14   dispute that Bekins' handling of the plaintiffs' goods caused damage to many of them, and many

15   of them were valuable.  In such a case, there could be (and usually would be) a dispute over the

16   *extent* of damage, but that cannot happen because Bekins is not before the court to undertake it.

17   Was the default due to "excusable neglect" (factor 6)?  Here, Bekins knew about the claim

18   and the amount in controversy, and "neglect[ed]" to continue its defense in the litigation, walking

19   away knowing that its decision would result in exactly what is about to happen:  a default

20   judgment.  Yes, its "neglect" may have been for lack of funds to pay an attorney, or because it had

21   suspended business operations, but those reasons do not contribute towards finding it excusable.

22   The 7th factor is the strong policy favoring decisions on the merits, but Bekins has not

23   made that possible by dropping out of the contest.

24   **C.      Damages**

25   The proof of plaintiffs' damages is found in the Declaration of Jeffrey A. Prussin, with

26   Exhibits.  Basically, Mr. Prussin did an intensive damage study, consulted a number of sources of

27   information, and ultimately arrived at his opinion of the value of every item lost or damaged

28   beyond repair as well as the diminution in value, measured by estimated cost of repair, of those

United States District Court
Northern District of California

4

items damaged but repairable.  In arriving at a valuation figure for each item, he was guided by the Full-Value Replacement Protection upgrade that plaintiffs bought from Bekins.  The upgrade required Bekins to repair to the extent necessary to restore the item to its condition prior to the move, replace lost or unrepairable goods with articles of like kind, or replace at current market value regardless of age.

The law is well settled that an owner of personal property, regardless of his qualifications or expertise (or lack thereof), is *entitled* to testify to his opinion of its value.  *See* Cal. Evid. Code § 813; 1 Witkin, Cal. Evid. 5th, Opinion Evid . § 18 (2012); Fed. R. Evid. 701.  The owner may even rely on hearsay in forming his opinion, *LaCombe v. A-T-O, Inc.*, 679 F.2d 431 (5th Cir. 1982).  It is in this light that the court accepts Mr. Prussin's testimony  on the value of the plaintiffs' collectibles and antiques lost or damaged in the move.

The total claimed damages on Mr. Prussin's itemized compilation is $529,565.59.  The court concludes that this amount has been adequately supported by the evidence.  To that amount Mr. Prussin added a 25% markup (or $132,391) for "tax, postage, shipping, handling, moving, insurance, etc."  The court declines to award this amount because it is speculative, not within the scope of permissible "damages" recoverable in this suit, lacks foundation, and does not fall into the area of "value" about which an owner is entitled to testify.  Plaintiffs may have judgment for $529,565.59 less the $140,000 paid to them by Triple Crown in settlement, for a total of $389,565.59.

**D.    Attorney's Fees**

Plaintiffs claim entitlement to an award of attorney's fees under a provision of the Carmack Amendment, 49 U.S.C. § 14708.  That section concerns a "dispute settlement program for household good carriers" and provides that attorney's fees shall be awarded to a shipper (here, plaintiffs) if certain conditions are met:

"(d)  Attorney's fees to shippers.—In any court action to resolve a dispute between a shipper of household goods and a carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 concerning the transportation of household goods by such carrier, the shipper shall be awarded reasonable attorney's fees if—

(1) The shipper submits a claim to the carrier within 120 days after

the date the shipment is delivered or the date the delivery is scheduled, whichever is later . . ..

49 U.S.C. § 14708(d)(1).  What then follows in the statute are several other conditions that also must be met and which, plaintiffs argue, were met in this case.  That may be true.  But, the problem is with the just-quoted first condition, which has to be met before the court looks to the other ones.  According to the  Complaint, the Prussins' goods were delivered to their California residence on December 4, 2010.[4]

Accordingly, they had 120 days, or until April 3, 2010 to submit a claim to the carrier. The Complaint says their first ("preliminary") claim was submitted to Bekins on July 28, 2010, and subsequent addenda thereafter.  By the express language of the statute, they submitted the first claim too late.  *See Nichols v. Mayflower Transit, LLC*, 368 F. Supp.2d 1104, 1109 (D. Nev. 2003).

The court has found no authority for tolling this statute.  Even if it were permissible, the Complaint makes it clear that evidence to support tolling is not there.  The plaintiffs were on notice that there were damage issues on the day of delivery, since they observed the movers dropping "very expensive items."  When asked by the movers to sign an inventory when the delivery was complete, plaintiffs wrote:  "Not inspected for damaged or missing items.  Applies to all pages."  They certainly could have (and should have) filed their preliminary claim sooner than almost 4 months after the 120 days had run.  The court does not award attorney's fees.

ORDER

Based on the foregoing, the Prussins shall have judgment against Bekins Van Lines LLC in the amount of $389,565.59.  The clerk shall enter judgment accordingly and close this file.

SO ORDERED.

Dated:   March 23, 2017

_____
HOWARD R. LLOYD
United States Magistrate Judge

---

[4] The Complaint actually says December 4, 2009, but this is obviously a typographical error and clearly meant to be December 4, 2010.

United States District Court
Northern District of California

5:13-cv-02874-HRL Notice has been electronically mailed to:

Allen Gabriel Haroutounian     aharoutounian@nemecek-cole.com

Frank Xavier Dipolito     fdipolito@swaindipolito.com, swaindipolito@lawyer.com

Gavin E Kogan     gavin@lg-attorneys.com

Gregg S. Garfinkel     ggarfinkel@nemecek-cole.com

Paul A. Rovella     paul@lg-attorneys.com, anne@lg-attorneys.com

Ross Ian Landau     rlandau@swaindipolito.com